UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACKLYN M. SUTCIVNI,<br>f/k/a JACQUELINE VACHON-JACKSON<br>Defendant. | )<br>)<br>)<br>)<br>)  Criminal No. 16-40031-TSH<br>)<br>)<br>)<br>)<br>)<br>) |

RE: REVOCATION OF RELEASE
August 12, 2021

HILLMAN, D.J.

## Background

On August 3, 2021, Defendant, Jacklyn M. Sutcivni, was convicted by a jury of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One), wire fraud in violation of 18 U.S.C. § 1343, conspiracy to defraud the United States, in violation of 18 U.S.C. §287 (Count Three), and making a false, fictitious or fraudulent claim and/or aiding and abetting the same, in violation of 18 U.S.C. § 286 and 18 U.S.C. §2. Sutcivni remained on release under the Court's previously imposed conditions pending sentencing which has been set for December 14, 2021.

On August 5, 2021, the United States Probation Office filed a petition seeking a review of Sutcivni's release pending sentencing on the grounds that she has violated her conditions of release by committing a crime while on release: she has been arrested by the Manchester Police Department and charged with Domestic Violence Simple Assault, physical contact; Criminal Threatening with a Deadly Weapon (a knife); and Criminal Threatening Conduct. At the preliminary hearing on the petition, the Government moved for revocation of Sutcivni's release and requested that she be detained pending sentencing.

At the revocation hearing, Officer Zachary Liupakka testified at the trial and the following exhibits were admitted: Officer Liupakka's police report, a Manchester Police Department Call for Service Record, a State of New Hampshire Domestic Violence/Stalking Criminal Conduct Order of Protection, Including Order and Conditions of Bail, and A State of New Hampshire Superior Court Bail Order. Additionally, the evidence included excerpts of video footage from Officer Liupakka's body camera, and audio excerpts of recorded telephone conversations between Sutcivni and her family and boyfriend during her recent incarceration at Wyatt Detention Center.

## Discussion

One of the primary conditions imposed for Sutcivni's continued release was that she not commit any offense in violation of federal, state or local law while on release. The Government alleges that Sutcivini has violated her conditions of release by assaulting her boyfriend, William, and threatening to kill him with a knife and that as a result, her release should be revoked and she should be detained pending trial.[1]

---

[1] At the revocation hearing, Sutcvini stipulated that she had violated her conditions of release when she was arrested by the Manchester Police Department. However, Sutcivni's conditions of release provide that she notify the probation department within 24 hours of any contact with law enforcement, including any arrest. It does not appear that she violated this condition. Sutcivni was not willing to stipulate that she violated the condition that she not

Applicable Law

Section 3148(b) provides that the judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –

(1) finds that there is –

(A)   probable cause to believe that the person has committed a Federal, State or local crime while on release; or

(B)   clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that –

(A)   based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B)   the person is unlikely to abide by any condition or combination of conditions of release.

If there is probably cause to believe that, while on release, the person committed a Federal State or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community …

Background Facts Relating to the Incident

This case is complicated by the fact that the only two people who were present during the alleged altercation and according to the Manchester Department Police report prepared by Officer Liupakka and his testimony, Sutcivni and William, have provided diametrically opposed versions of the events.  Sutcivni claims that she and William had an argument after she told him she wanted to leave (they both had been drinking) and that as she was trying to leave the residence to de-escalate the situation, William initiated a physical altercation repeatedly shoving

---

commit any state, federal or local crime while on release and for that reason, the Court held an evidentiary hearing on the Government's motion to revoke.

her to the ground and grabbing her left arm. She then grabbed a kitchen knife and told William she would defend herself and that he should go to the bedroom. William then went to the bedroom and she put the knife down on the coffee table and began removing her possessions. Upon returning to the residence after bringing stuff to her car, she was met by William at the front door— he ran towards her and shoved her down the stairs. He then threw her possession out after her. She called 911 and reported the incident telling the dispatcher that she may have seen the kitchen knife coming out of William's pocket and flying at her. Officer Liupakka inquired of dispatch whether there was a prior history of domestic violence at the address and was told no— police had been there previously for one argument, but it was not clear whether it involved Sutcivni. Sutcivni told the officer that she had a previous history of domestic violence not involving William.

     According to William, Sutcivni assaulted him and threatened him with a kitchen knife after they got into an argument about her wanting to leave—he told her if she left, she would not be welcomed back. Sutcivini got upset and told him she would kill him.  William told her that if she wanted to kill him there was a knife in the top drawer of his dresser. Sutcivini then began to rummage through William's dresser drawer. When she did not find a knife, Sutcivini grabbed William by the shirt, ripping it, and pushed him.  She then went to the kitchen and grabbed a knife out of a block which held several knives.  At this point, William sat down on the couch in the living room while Sutcivini, still holding the knife, began removing items from apartment. While Sutcivini was going to her car, William grabbed her laundry basket and began walking toward the front door because he wanted her out of his apartment. Sutcivini then began running towards the front doorway with the knife in her hand, raised above her head and pointed at William while stating she was going to kill him.  As she approached, William shoved her down

the stairs to protect himself. William denied that he previously shoved her down on the ground or grabbed her arm but acknowledged that he did push her away when she started to rip his shirt. William's story did not change throughout the various interviews.

The responding officers observed that William's shirt was ripped and that it appeared someone had rummaged through his dresser drawer (this was confirmed on the video footage). The kitchen knife (which matched the others in the knife block in William's kitchen) was found in plain site on the passenger seat of Sutcivni's car. When Officer Liupakka requestioned Sutcivni based on finding the knife in her car and William's statement, she repeatedly changed her version of the events and gave inconsistent statements. Officer Liupakka asked her why she just did not go out the back door and her response was inconsistent with the layout of the apartment as it appeared on the video footage from his body camera. Sutcivini was asked if she had put her hands on William, she acknowledged she had. When asked why she had not mentioned that previously, she told him that she was emotional about the whole incident. Additionally, when questioned about how the knife got into her vehicle, she recanted her earlier statement that she had put it on the coffee table and stated she was not sure how it got into her vehicle. Sutcivni was arrested on multiple charges relating to the incident and later that night released on bail with conditions that included she not have any contact with William, directly or indirectly. William was not arrested.

After her release on conditions by the New Hampshire authorities, Sutcivni has called William on multiple occasions. At the same time, it appears that William has attempted to contact Sutcivni. Sutcivni has had telephone conversations with her daughter in which she has stated that she would not be able to abide by conditions which include confinement to her home, or the wearing of a GPS monitoring device.

Applying the Law: Whether Sutcivni's Release should be Revoked

Whether there is probable cause to believe that Sutcivini committed the crimes with which she is charged arising out of this domestic incident comes down to a question of credibility.  The responding police officers who observed the physical evidence, questioned William and Sutcivni and observed their demeanors, determined that William was the more credible of the two. My own observation of the body camera footage confirms the officers' finding. Moreover, Sutcivini testified on her own behalf in her trial which recently concluded. During that testimony, the Government successfully impeached her credibility on numerous occasions and on many different subjects.  Based on my own observations of her during that testimony and the evidence that was presented at the revocation hearing, I find her to be less than credible.

I find that the evidence establishes that there is probable cause to believe that Sutcivni committed the crimes with which she has been charged, that is, Domestic Violence Simple Assault, physical contact; Criminal Threatening with a Deadly Weapon (a knife); and Criminal Threatening Conduct. Accordingly, a rebuttable presumption now arises that no condition or combination of conditions will assure that she will not pose a danger to the safety of any other person or the community if she were released.  In order to determine whether or not there are conditions of release that will assure that Sutcivni will not pose a danger to the community, I am required to examine the provisions of Section 3142.  At the revocation hearing, Sutcivni's counsel primarily argued that she is not a danger to flee as she has always appeared to court proceedings as required and would live with her mother and daughter in a house she owns. She is willing to submit to GPS monitoring and home confinement pending sentencing. The

6

Government focused its argument on the fact that Sutcivni is an ongoing danger to the community.[2]

The issue before me is whether Sutcivni has rebutted the presumption that she is a danger to the community. In making this determination, I must consider the violent nature of her actions. Additionally, she has continued to contact William after her release by the New Hampshire authorities despite a bail order in place that she must not do so. I must also consider that this is the second time she has been charged with violating the conditions of release: in 2018, the U.S. Probation Department sought a review of her bail conditions after she left Massachusetts without permission and was charged with the crime of obtaining goods under false pretenses by the state of Rhode Island as a result of an incident at the Twin Rivers Casino, both of which were violations of her conditions of release. Sutcivni was found to have violated her conditions of release and while she was not revoked, an additional condition requiring GPS monitoring was added for a period of time. Sutcivni has expressed to her daughter and William that as a result of that experience, she would not be able to comply with conditions of release that include home confinement or GPS monitoring. Given the totality of these circumstance, I find that there are no conditions that I could impose that would protect the safety of the community if Sutcivni were released. Moreover, based on the totality of all of the evidence presented during the course of this revocation hearing, I find that Sutcivni is unlikely to abide by any condition or combination of conditions of release that I may impose to protect the safety of the community if she were released.

---

[2] While I have focused on whether Sutcivni is a danger to the community, her telephone conversations with her family and William make clear that she would not abide by any conditions which included home confinement or GPS monitoring. For this reason, I further find that there is probable cause to believe that she would not appear as required if released and that there are no conditions or combination of conditions that I could impose that would assure her appearance as required.

### Conclusion

The Government's motion to revoke the release of Jacklyn M. Sutcivni pending sentencing is granted.

### Order of Detention Pending Sentencing

In accordance with the foregoing memorandum, IT IS ORDERED:

That Defendant be committed to the custody of the Attorney General, or her designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

That Defendant be afforded a reasonable opportunity for private consultation with counsel; and

On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Defendant is detained and confined shall deliver Defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

### Right Of Appeal

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/*Timothy S. Hillman*
**Timothy S. Hillman**
**United States District Judge**